**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. 1:23-cv-288 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| HORIZON GLOBAL CORPORATION, | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| JOHN C. KENNEDY, JOHN F. BARRETT, | : **THE SECURITIES EXCHANGE ACT** |
| DONNA M. COSTELLO, RYAN | : **OF 1934** |
| LANGDON, BRETT N. MILGRIM, DEBRA | : |
| OLER, and MARK D. WEBER, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Horizon Global Corporation ("Horizon or the "Company") and the members Horizon board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Horizon by affiliates of First Brands Group, LLC ("First Brands Group").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on January 10, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby PHX Merger Sub, Inc. ("Purchaser"), a wholly owned subsidiary of First Brands Group ("Parent"), will merge with and into Horizon, with Horizon continuing as the surviving corporation and as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated December 30, 2022 (the "Merger Agreement"), each Horizon common share issued and outstanding will be converted into the right to receive $1.75 in cash per share owned; (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer on January 9, 2023 to acquire all of Horizon's outstanding common stock and will expire on January 24, 2023 (the "Tender Offer").

3. Defendants have now asked Horizon's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Horizon's financial projections relied upon by the Company's financial advisor, Lincoln International, LLC ("Lincoln"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Lincoln. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Horizon stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Horizon's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company stock trades on the New York Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Horizon common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant John C. Kennedy has served as a member of the Board since November 2022 and is the Interim President and Chief Executive Officer of the Company.

11. Individual Defendant John F. Barrett has served as a member of the Board since April 2021.

12. Individual Defendant Donna M. Costello has served as a member of the Board since June 2021.

13. Individual Defendant Ryan Langdon has served as a member of the Board since April 2019.

14. Individual Defendant Brett N. Milgrim has been a member of the Board since April 2019.

15. Individual Defendant Debra Oler served as a member of the Board since March 2020.

16. Individual Defendant Mark D. Weber served as a member of the Board since April 2019.

17. Defendant Horizon is incorporated in Delaware and maintains its principal offices at 47912 Halyard Drive, Suite 100, Plymouth, Michigan, 48170. The Company's common stock trades on the New York Stock Exchange under the symbol "HZN."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

20. Horizon engages in the design, manufacture, and distribution of towing, trailering, cargo management, and other related accessory products worldwide. It operates in two segments, Horizon Americas and Horizon Europe-Africa. The Company provides towing products, such as hitches/tow bars, fifth wheels, gooseneck hitches, weight distribution systems, brake controllers, wiring harnesses, draw bars, ball mounts, crossbars, security products, and other towing

4

accessories. It also offers trailering products, including brake controllers, jacks, winches, couplers, interior and exterior vehicle lighting, and brake replacement parts. In addition, the Company provides cargo management products comprising bike racks, roof cross bar systems, cargo carriers, luggage boxes, car interior protective products, loading ramps, and interior travel organizers. Further, it offers other products consisting of tubular push and sports bars, side steps, skid plates, and oil pans. The Company sells its products under the Reese, Draw-Tite, Westfalia, Bulldog, BTM, Fulton, Reese Secure, Reese Explorer, Reese Power Sports, Reese Towpower, ROLA, Tekonsha, WesBar, and Witter Towbar Systems brands. It serves aftermarket, automotive original equipment manufacturers, automotive original equipment servicers, retail, e-commerce, and industrial customers within the agricultural, automotive, construction, horse/livestock, industrial, marine, military, recreational, trailer, and utility markets. The Company was incorporated in 2015 and is headquartered in Plymouth, Michigan.

21. On January 3, 2022, the Company announced the Proposed Transaction:

> PLYMOUTH, Mich.--(BUSINESS WIRE)--Horizon Global Corporation (NYSE: HZN) ("Horizon Global"), one of the world's leading manufacturers of branded towing and trailering equipment, today announced it has entered into a definitive merger agreement with First Brands Group, LLC ("First Brands"), a global automotive parts manufacturer that serves the worldwide automotive aftermarket, pursuant to which First Brands will acquire Horizon Global (the "Transaction"). The terms of the Transaction include an all-cash tender offer, which upon successful closing will entitle each stockholder of Horizon Global's common stock to receive cash consideration of $1.75 per share.
>
> Highlights of the Transaction:
>
> - The Transaction will result in a collection of market leading brands within the automotive industry, serving both OEM and the aftermarket channels under one group. Horizon Global's portfolio of pioneering towing and trailering brands and innovative products are complementary to First Brand's well recognized portfolio of braking solutions, filters, wiper blades, gas springs, spark plugs and

- fuel and water pumps, offering best-in-class technology, engineering, manufacturing and customer service.
- The combined group will have improved access to capital to ensure the continued growth and product development that has been a long-term strategic priority for Horizon Global, enabling the group to focus on serving its broad customer base without interruption.
- Despite the difficult market backdrop, the Transaction represents a 31% premium to the trading price prior to the strategic alternative announcement in August 2022, and a 237% premium over the 30 day volume weighted trading price in Horizon Global's common stock.

"The Transaction represents the culmination of a thorough review of strategic alternatives announced in August and represents what we believe is the best outcome for our customers, suppliers, shareholders and employees," stated Horizon Global's interim CEO and Board Chair John C. Kennedy. "After consideration of a number of different alternatives, the Board believes this Transaction is the best path forward for shareholders to address Horizon Global's capital needs while supporting the long-term growth and sustainability of Horizon Global's business. Our management team and employees of Horizon Global are committed to delivering innovative, high-quality towing and trailering products, and this Transaction provides the resources needed to deliver on that commitment."

"We are pleased to welcome Horizon Global to the First Brands family, we are excited to build on Horizon Global's established products, brands and customers and we look forward to realizing benefits for both Horizon Global and First Brands as we move forward," stated Guy Andrysick, Executive Vice President, First Brands.

The closing of the Transaction is subject to certain conditions, including the tender of shares representing at least a majority of the total number of Horizon Global's outstanding shares of common stock, the tender of Series B preferred stock at a cash consideration equal to the applicable redemption price and other customary conditions. Other than filings with the SEC, no regulatory filings or approvals are anticipated in connection with the Transaction. Horizon Global expects the Transaction to be completed in the first quarter of 2023.

Jefferies LLC acted as financial advisor and Lincoln International LLC provided a Fairness Opinion to Horizon Global, and Jones Day

acted as legal counsel to Horizon Global. Paul Hastings LLP acted as legal counsel to First Brands.

* * *

22.     It is therefore imperative that Horizon's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

23.     On January 10, 2023, Horizon filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning the Company's Financial Projections*

24.     The Solicitation Statement fails to provide material information concerning financial projections by Horizon management and relied upon by Lincoln in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Lincoln with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should

have, but fails to provide, certain information in the projections that Horizon management provided to the Board and Lincoln. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Lincoln's Financial Analysis*

29. With respect to Lincoln's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 12.00% to 14.00%; (ii) the terminal value of the Company; (iii) the inputs and assumptions underlying exit EBITDA multiple range of 10.0x to 11.0x; (iv) Lincoln's calculation of Adjusted EBITDA; (v) the Company's non-cash stock compensation expense; and (vi) income (losses) attributable to non-controlling interest.

30. With respect to Lincoln's *Selected Public Companies Analysis*, the Solicitation Statement fails to disclose the financial metrics for each company selected by Lincoln for the analysis.

31. With respect to Lincoln's *Selected M&A Transactions Analysis*, the Solicitation Statement fails to disclose the financial metrics for each transaction selected by Lincoln for the analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. With respect to Lincoln's *Summary of Analysis*, the Solicitation Statement fails to disclose: (i) the present value of non-recurring expenses; (ii) the present value of net operating loss tax benefits; (iii) the Company's cash and cash equivalents, restricted cash, and non-controlling interests; (iv) the Company's debt and debt like items; (v) the Company's non-operating assets and liabilities; (vi) fully diluted shares of the Company outstanding.

33. With respect to Lincoln's engagement as the Company's financial advisor, the Solicitation Statement fails to disclose: (i) the portion of the $375,000 fee that was payable upon Lincoln's retention; and (ii) whether Lincoln was retained by the Company or First Brands Group in the two-year period prior to the execution of the Merger Agreement.

34. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

37. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

39. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

40. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

41. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

42. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
**(Against All Defendants)**

43. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

44. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

45. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

46. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

47. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had

access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

48. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Horizon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Horizon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Horizon, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Horizon, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

53. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: January 12, 2023                    **MELWANI & CHAN LLP**

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Floor
New York, New York 10036
Tel: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*